

**SIGNED this 11 day of April, 2007.**

_____
R. Thomas Stinnett
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                    No. 05-13575
                                                                          Chapter 7
D.M. WHITE CONSTRUCTION CO., INC.,

        Debtor(s).

## MEMORANDUM

This case is before the court on the objection by the trustee to claims no. 48 and 103, as amended, filed by the Hamilton County Delinquent Tax Office (hereinafter "Hamilton County"), and the response thereto by Hamilton County. After notice and a hearing, and after hearing the arguments of counsel for the trustee and for Hamilton County, the court took the matter under advisement. Following a review of the record and after consideration of the briefs submitted by the parties, the court issues the following findings of fact and conclusions of law.

1

**Facts**

This case was commenced on June 8, 2005, as a voluntary petition pursuant to chapter 11 of Title 11 of the United States Code. On August 23, 2005, the debtor moved to convert the case to one under chapter 7, and the order granting the motion was entered the same day. Thomas E. Ray was duly appointed as the chapter 7 trustee in the case. On August 23, 2005, Hamilton County filed claim no. 48 in the amount of $1,063.06 representing personalty taxes due for 2004, which included a base tax of $1,002.88 for personalty, plus interest calculated at 12% per annum, beginning July 1, 2005. On December 14, 2005, Hamilton County filed claim no. 103 in the amount of $5,146.00 representing personalty taxes for 2005, also bearing interest at a rate of 12%. On January 15, 2007, Hamilton County amended the claim by increasing the amount to $11,029.06 which represented the base tax in the amount of $5,146 for personalty tax due for the 2005 tax year plus interest of $566.06 through January 31, 2007, as well as $5,317.00 designated "As billed per forced assessment" for the tax year 2006. The trustee amended his objection to include the additional $5,317.00 because the personal property that was the subject of the tax had been sold by the trustee on November 4, 2005. As such, the estate contained no personalty against which the tax could be levied. The court sustained the trustee's objection with respect to the additional $5,317.00 at the hearing on February 15, 2007. The trustee does not dispute the base amounts of the claims, nor that they are duly recorded and properly perfected tax liens secured by personalty of the debtor. The trustee also does not dispute that the value of the property securing the tax liens and sold by the trustee exceeds the total amount of liens against the property, resulting in Hamilton County's status as an oversecured creditor in this case. Instead, the trustee objects to

Hamilton County's calculation of interest on the claims at a rate of 12% rather than the 6% prime rate which was in effect at the time of filing the petition, and asserts that § 506(b) requires a "reasonable" interest rate in fairness to the other creditors in the case. In its response to the trustee's objections, Hamilton County relies upon a state statute, Tenn. Code Ann. § 67-5-2010[1], which provides for interest at the higher 12% rate. For the reasons set forth herein, the trustee's objection with respect to the calculation of the claims based upon an interest rate of 12% per annum will be overruled.

### Conclusions of Law

The trustee bases his argument on the language of 11 U.S.C. § 506(b) and the opinions of the United States Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), and *U.S. v. Ron Pair Enterprises, Inc..,* 489 U.S. 235 (1989). 11 U.S.C. § 506 addresses determination of secured status, and paragraph (b) states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b), *amended by* Pub.L.No. 109-8, § 712(d)(1)(2005)(inserting "or State statute" after "agreement").

---

[1] § 67-5-2010. Penalty and interest. — (a)(1) To the amount of tax due and payable, a penalty of one-half of one percent (.5%) and interest of one percent (1%) shall be added on March 1, following the tax due date and on the first day of each succeeding month, except as otherwise provided in regard to municipal taxes. . . .

When the value of the collateral exceeds the amount of the claim, the claim is over-secured and the creditor is entitled to interest thereon.  In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court held that § 506(b) provides for recovery of post-petition interest for both consensual and non-consensual liens.  *Ron Pair*, 489 U.S. at 241-42, 109 S.Ct. at 1030-31.[2]  However, while the opinion addressed the issue of entitlement to post-petition interest, the Court did not address the appropriate interest rate to be applied under § 506(b).  *Id.* 489 U.S. at 243-46, 109 S.Ct. 1031-33.  Since neither the Code nor the legislative history of § 506(b) provides insight into Congressional intent with respect to post-petition interest rates for oversecured claims, courts have relied upon pre-Code and pre-*Ron Pair* case law to determine interest rates, and have generally applied the interest rate set forth in the contract between the debtor and the creditor.  *See, e.g., In re Terry Limited Partnership*, 27 F.3d 241, 243 (7th Cir. 1994); *Bradford v. Crozier (In re: Laymon),* 958 F.2d 72, 75 (5th Cir. 1992); *In re Dixon*, 228 B.R. 166, 172 (W.D. Va. 1998).

In *In re Marfin Ready Mix Corp.*, 220 B.R. 148 (Bankr.E.D.N.Y., 1998), the chapter 11 debtor petitioned the bankruptcy court to determine, *inter alia*, the interest rate to be charged on delinquent real estate taxes. *Ready Mix*, 220 B.R. at 150.  With respect to the issue of the rate of postpetition interest, the court observed that the courts are divided, noting that some hold that statutorily-created liens are entitled to the statutory rate of

---

[2]In 2005, Congress amended 11 U.S.C. § 506(b) in Pub. L. No. 109-8, § 712(d)(1) to insert "or State statute" after "agreement," thereby codifying the Supreme Court's application of § 506(b) to both consensual and non-consensual liens.

4

interest, citing *In re Greensboro Lumber Co.*, 183 B.R. 316 (Bankr.M.D.Ga. 1995); *In re Isley,* 104 B.R. 673 (Bankr.D.N.J.1989); *In re Busone*, 71 B.R. 201 (Bankr.E.D.N.Y.1987); and *In re Parr Meadows Racing Ass'n., Inc.*, 880 F.2d 1540 (2nd Cir. 1989), while some courts find that they have discretion to engage in a case-by-case equitable balancing analysis of the competing interests of secured and unsecured creditors, citing *In re Kalian*, 178 B.R. 308 (Bankr.D.R.I.1995); *In re DeMaggio*, 175 B.R. 144 (Bankr.D.N.H.1994); and *In re Wasserman v. City of Cambridge*, 151 B.R. 4 (D.Mass.1993).  The court then chose to align itself with those courts that subscribe to the idea that while courts possess the power to modify rights created by state law or private agreement, ". . .the Court should be loathe to exercise [that power] in the absence of compelling evidence that recognition of a right created by state statute or private agreement would do violence to the principles which constitute the foundation of bankruptcy law." *Id.* at 155. Furthermore, the court noted that adopting a "market rate" approach "would leave an unresolved fact issue in every bankruptcy case, which would require litigation for every new day's market." *Id.* at 155 (*citing Galveston Indep. School Dist. v. Heartland Fed. Savs. & Loan Assoc.*, 159 B.R. 198, 204 (S.D.Tex.1993)).  Furthermore, taxes are imposed to pay the costs of government, which is a different objective from a commercial transaction wherein the parties have bargained for certain rights, citing *In re Liuzzo*, 204 B.R. 235, 240 (Bankr.N.D.Fla.1996). The court continued by observing that the debtor's complaint that the 18% interest sought by the taxing authority was not a "reasonable" rate and should, therefore, be reduced to 9%, was problematic when considered in light of the inability of the taxing authority ". . .to bargain for lender protections typically built into a consensual secured transaction, such as title insurance and hazard insurance. . . . The Debtor may be uninsured and the property

5

may burn to the ground, leaving the City with no security for repayment. In addition, some differential between tax rates and commercial rates may be required to encourage prompt tax payments." *Id.* at 156-57 (citations omitted). The court then permitted postpetition interest pursuant to § 506(b) from the date of filing to the effective date of the plan at the 18% rate set forth in the statute. The court finds the *Ready Mix* court's analysis persuasive.

In *Laymon*, the Fifth Circuit Court of Appeals held that when an oversecured creditor's claim arises from the contract, the contract provides the post-petition interest rate. *Bradford v. Crozier (In re: Laymon)*, 958 F.2d 72, 75 (5th Cir. 1992). However, the contract in that case also provided for a 10% pre-default contract rate as well as an 18% default rate, the latter of which the creditor claimed to be entitled. The Fifth Circuit noted that courts were "not required in all cases to apply a contractual default rate of interest in determining the amount of an 'allowed secured claim' within the meaning of [§506(b)]", citing *In re Sheppley & Co.*, 62 B.R. 271 (Bankr.N.D.Iowa 1986) and its discussion of certain pre-Code cases, and further observed that the application of either the 18% default rate or the 10% pre-default rate ". . . must be decided by examining the equities involved in this bankruptcy proceeding." *Id.* at 75. Accordingly, while the court approved application of an interest rate established by the contract between the parties, the case was remanded to the bankruptcy court for a determination of which of the two contractual interest rates applied. In the case at bar, unlike the contract in *Laymon*, the statute upon which Hamilton County relies contains only one interest rate and this court is not required to choose between two or more potential rates contained therein.

In *In re Dixon*, 228 B.R. 166, 172 (W.D. Va. 1998), the chapter 11 debtor objected to

the oversecured creditor's proof of claim which included a contractual default interest rate of thirty-six percent (36%). The District Court for the Western District of Virginia reversed the bankruptcy court's decision denying the creditor's statutory right to the default interest. The court first observed that "[d]efault rates of interest do not enjoy, however, the same straightforward treatment that postpetition interest claims for basic interest do generally." 228 B.R. 166, 172. The court then proceeded to resolve the issue of the creditor's entitlement to default interest based upon equitable principles, finding that "[t]he facts and equities specific to each case . . . prove determinative in the analysis of default rates." *Id*. Again, with respect to the case at bar, Hamilton County does not seek application of an additional higher, default rate of interest to its claim but instead seeks application of the statutory base rate; thus, the *Laymon* and *Dixon* courts' consideration of equitable principles is not necessary in this case under these circumstances.

The trustee also relies upon *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004)(plurality opinion). In *Till,* the chapter 13 debtors' plan valued a vehicle securing the creditor's $4,894.89 claim at $4,000, thus bifurcating the claim as secured in the amount of $4,000 and unsecured in the amount of $894.89. The plan provided interest on the secured portion at a rate of 9.5% per year, which represented the national prime rate of 8% plus 1.5% for the risk of nonpayment by borrowers in a similar financial situation. The creditor, however, argued that the interest to which it was entitled was 21%, which represented the rate obtainable if the creditor could ' ". . .foreclose on the vehicle and reinvest the proceeds in loans of equivalent duration and risk as the loan" originally made to petitioners.' *Id*. 541 U.S. at 471, 124 S.Ct. at 1957. The Court evaluated the methods of calculating the interest rate in a cramdown, which include the

7

coerced loan method; the presumptive contract rate method, the formula rate method (utilized by the debtors in *Till*), and the cost of funds method.

With due respect to the trustee in his desire to fairly administer the assets of the bankruptcy estate, the court notes that the focus of the Supreme Court in *Till* was upon the challenge of determining which of the four rates of interest described in the opinion were contemplated by Congress when it adopted the cramdown provision of 11 U.S.C. § 1325(a)(5)(B), and in particular, the concern that the requirement

> . . . that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total "value, as of the effective date of the plan," that equals or exceeds the value of the creditor's allowed secured claim - in this case, $4,000. § 1325(a)(5)(B)(ii).
>
> That command is easily satisfied when the plan provides for a lump-sum payment to the creditor. Matters are not so simple, however, when the debt is to be discharged by a series of payments over time. A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment. The challenge for bankruptcy courts reviewing such repayment schemes, therefore, is to choose an interest rate sufficient to compensate the creditor for these concerns.

541 U.S. at 473-74, 124 S.Ct. at 1958.

The court notes that the *Till* Court did not address § 506(b). Moreover, at least one court has noted that application of the plurality's formula approach to establishing the interest rate may not be required even in chapter 11 cases despite the similarities between the two provisions of the Code addressing treatment of allowed secured claims. *See, American HomePatient, Inc.,* 420 F.3d 559, 566-67 (6th Cir. 2005)*(citing In re Prussia Assocs.*, 322 B.R. 572, 585, 589 (Bankr.E.D.Pa. 2005)). As observed by counsel for Hamilton County, application of *Till* in a chapter 7 case appears even less compelling.

The court also notes that the trustee's assertion that a "reasonable," lower interest rate must be applied in this case on equitable grounds is misplaced. Unlike *In re Process Property Corp.*, 327 B.R. 603 (Bankr.N.D. Tex. 2005), cited by the trustee, there is no inferior lienholder with rights in the personalty securing the taxing authority's lien. 327 B.R. at 609. Hamilton County does not occupy the position of a potentially overreaching creditor, nor is an equity principle at issue in this case that would require the court to reduce the claim of this secured creditor under these circumstances for the benefit of unsecured creditors or junior lienholders.

Finally, the debtor's objective in a chapter 13 plan which proposes repayment of debt with interest to consensual lien creditors is not the same as the objective of a chapter 7 trustee in administering and distributing the assets of a liquidating estate which will provide a lump-sum payment to the creditor. The chapter 13 debtor seeks to repay funds previously obtained from a consensual lien creditor, and to continue the relationship between the parties but to enlist the assistance of the bankruptcy court in a repayment plan designed to compensate the creditor for risks associated with potential non-payment in the future. A non-consensual, sovereign lien creditor in a chapter 7 case, however, is looking to the finite resources available in a liquidating estate for payment of a statutorily imposed tax, not the future repayment of previously borrowed funds.

The court will enter an order overruling the trustee's objection to the claims of Hamilton County for the reasons set forth herein.

# # #